01

02

03

04

05

06
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
07
AT SEATTLE

08 SUSAN PEARCE,                          )      CASE NO. C06-1091-JCC
                                          )
09          Plaintiff,                    )
                                          )
10      v.                                )      REPORT AND RECOMMENDATION
                                          )      RE: SOCIAL SECURITY
11 MICHAEL J. ASTRUE, Commissioner        )      DISABILITY APPEAL
of Social Security,                       )
12                                        )
            Defendant.                    )
13 _____)

14          Plaintiff Susan Pearce proceeds through counsel in her appeal of a final decision of the

15 Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied

16 plaintiff's application for Disability Insurance (DI) benefits after a hearing before an Administrative

17 Law Judge (ALJ).

18          Having considered the ALJ's decision, the administrative record (AR), and all memoranda

19 of record, it is recommended that this matter be REMANDED for further administrative

20 proceedings.

21 / / /

22 / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01 **FACTS AND PROCEDURAL HISTORY**

02 Plaintiff was born on XXXX, 1960.[1] She completed high school and vocational training

03 to obtain a real estate license.  Plaintiff previously worked as a cosmetics salesperson, cosmetic

04 sales representative, merchandiser, and realtor.

05 With a filing month of May 2003, plaintiff filed an application for DI benefits, alleging

06 disability since November 2, 2001.  (AR 65-67.)  Because her insured status for DI expired as of

07 December 31, 2003, she is required to show disability as of that date last insured (DLI).  *See* 20

08 C.F.R. §§ 404.131, 404.321.   Her application was denied at the initial level and on

09 reconsideration, and she timely requested a hearing.

10 On August 3, 2005, ALJ Arthur Joyner held a hearing, taking testimony from plaintiff,

11 medical expert James Haynes, M.D., and vocational expert (VE) Susan Bachelder Stewart, Ph.D.

12 (AR 290-348.)   On December 29, 2005, ALJ Joyner issued a decision finding plaintiff not

13 disabled.  (AR 16-27.)

14 Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on July

15 11, 2006, making the ALJ's decision the final decision of the Commissioner.  (AR 5-8.) Plaintiff

16 appealed this final decision of the Commissioner to this Court.

17 **JURISDICTION**

18 The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

19 / / /

20

21 [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the

22 General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01

**DISCUSSION**

02      The Commissioner follows a five-step sequential evaluation process for determining

03  whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

04  be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not

05  engaged in substantial gainful activity since her alleged onset date. At step two, it must be

06  determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's

07  multiple sclerosis (MS) severe. Step three asks whether a claimant's impairments meet or equal

08  a listed impairment. The ALJ found that plaintiff's impairment did not meet or equal the criteria

09  for any listed impairment. If a claimant's impairments do not meet or equal a listing, the

10  Commissioner must assess residual functional capacity (RFC) and determine at step four whether

11  the claimant has demonstrated an inability to perform past relevant work. The ALJ assessed

12  plaintiff's RFC and found her unable to perform her past relevant work. If a claimant

13  demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner

14  to demonstrate at step five that the claimant retains the capacity to make an adjustment to work

15  that exists in significant levels in the national economy. The ALJ found plaintiff capable of

16  performing other jobs, including work as a sales associate, call out operator, and night guard.

17      This Court's review of the ALJ's decision is limited to whether the decision is in

18  accordance with the law and the findings supported by substantial evidence in the record as a

19  whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more

20  than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

21  mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

22  (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01   decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

02   2002).

03          Plaintiff argues that the ALJ erred in finding her capable of working at step five, noting

04   she could not perform the 8,000 semi-skilled jobs out of the 8,050 total jobs identified by the VE

05   and asserting that the remaining fifty jobs identified is not a significant number.  She also asserts

06   error in the ALJ's RFC assessment and the VE's testimony with respect to a "sit/stand" restriction.

07   Plaintiff further argues that the ALJ erred in rejecting the opinions of her treating neurologist Dr.

08   Nancy Lellelid and in finding her and several lay witnesses not credible.  Plaintiff requests remand

09   for an award of benefits or, alternatively, for further administrative proceedings.

10          Defendant concedes error, but argues that this case should be remanded for further

11   administrative proceedings.  Defendant asserts the need for a more detailed rationale for the ALJ's

12   RFC finding, stating that, as all of the medical evidence presented to the ALJ is beyond plaintiff's

13   DLI, it is unclear how the ALJ established plaintiff's RFC.  This allegedly deficient RFC also

14   implicates the ALJ's step five decision.  Defendant concedes the step five error asserted by

15   plaintiff, agreeing plaintiff could not perform any of the semi-skilled work and that the remaining

16   fifty jobs is not significant.  However, defendant argues that, because it is not clear plaintiff would

17   be unable to perform all unskilled jobs, an award of benefits would be premature.  The

18   Commissioner does not address any of defendant's other arguments, stating instead that, on

19   remand, the ALJ should: fully address and explain the weight assigned to the medical evidence,

20   especially for the time period on or before December 31, 2003; reassess plaintiff's maximum RFC,

21   providing examples from the record in support of the RFC determination; and, if necessary, obtain

22   supplemental vocational expert evidence.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01    In reply, plaintiff rejects as false the Commissioner's contention that the record contains

02 no medical evidence prior to December 31, 2003 and provides citation to the relevant portion of

03 the record.  (*See* AR at 126-34.)  She further describes the ALJ's reference to whether or not she

04 could perform "all" unskilled jobs as improper, noting that the step five test is whether she can

05 perform jobs existing in significant numbers.

06    The Court has discretion to remand for further proceedings or to award benefits.    *See*

07 *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may direct an award of benefits

08 where "the record has been fully developed and further administrative proceedings would serve

09 no useful purpose." *McCartey v. Massanari* 298 F.3d 1072, 1076 (9th Cir. 2002).

10    Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient
      reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that

11    must be resolved before a determination of disability can be made; and (3) it is clear
      from the record that the ALJ would be required to find the claimant disabled if he

12    considered the claimant's evidence.

13 *Id*. at 1076-77.

14    It is undisputed that the ALJ failed to identify a significant number of jobs plaintiff could

15 perform at step five.  However, either because the parties disagree, or because defendant failed

16 to address the issue, there remain a number of issues to resolve in determining whether this case

17 should be remanded for an award of benefits or for further administrative proceedings.  Because

18 the ALJ blended his analysis and findings with respect to those issues in his decision, the relevant

19 portion of the ALJ's decision is excerpted here:

20    The claimant's statements concerning her impairment and its impact on her ability to
      work are not entirely credible. First of all there is little medical evidence in the record

21    as most of the medical evidence was obtained after the hearing.  However, the record
      confirms that the claimant was diagnosed with relapsing/remitting multiple sclerosis

22    in 1999.  While the claimant's diagnosis clearly precedes her date last insured of

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

December 31, 2003, there is little evidence of treatment prior to this period and no record of exacerbations of disabling severity. Objectively, her MRI in August 2004 had not changed since her diagnoses in 1999. She has had very little active treatment since being diagnosed, being maintained on medications without evidence of difficulty or progression of symptoms. Although she complains that she is disabled due to pain and fatigue, the record does not support this. In July 2004 her treating physician opined that she had worsened but this was not confirmed on the MRIs, nor is any worsening of signs, symptoms or functioning documented during the period prior to the claimant's DLI. Her examination on July 15, 2004 noted some impairment but it appeared to be mild to moderate at worst. On September 3, 2004 her exam likewise showed mild impairment. Her treating physician opined on July 25, 2005, that the claimant was disabled due to fatigue, weakness, and balance, but other than her complaints there is no objective support for the degree of severity the claimant asserts. Moreover, this opinion was rendered over eighteen months after the claimant's DLI. Thus, I give little weight to the treating source's opinions as it is not supported by the objective evidence as a whole. Even in the period after her DLI, she is mostly noted to ambulate normally, if somewhat slowly. Her reflexes are mildly impaired and her neurological exams do not show any major deterioration of function. There are no records of exacerbations – let alone frequent ones, and no record of a slow progressive deterioration of function.

Additionally, I also note that the claimant's record of earnings evidences that she has not worked much since 1996 which is well before she started having symptoms. The consultative examiners and the medical expert basically agree that there is only mild impairment. I do not credit the claimant's assertion of disabling fatigue, weakness and balance as she has received little treatment in the 5+ years since her diagnosis and there has been only minimal medical attention to her impairments, far less than would be expected if she were impaired as she says. Her medical records show she takes 6 over-the-counter medications, 1 for nausea, 2 for multiple sclerosis and 1 for pain. I note that the claimant is not taking any narcotic based pain relieving medication in spite of the allegations of quite limiting pain.

I have reviewed the claimant's husband's statements at exhibits 6E and 10E as well as the claimant's friend at exhibit 5E and do not find them persuasive. The husband noted the claimant tried to work but could not. But as stated previously, the claimant's work history reflects little work even prior to her reports of symptoms. He indicated that her attempts were at jobs that required a lot of exertion such as standing (Costco and Nordstrom) or walking/driving (real estate). Although I find none of these jobs may be appropriate, she could do a modified light position. The claimant's friend reported significant limitations and needing assistance from others.

I am unable to credit the lay witness's statements in this matter as probative in terms of the ultimate issue of disability in light of the medical and other factors of this case.

01 See, Smolen v. Chater, 80 F.3d 1273, 1274 (9th Cir. 1996) (concluding that ALJ may
consider observations of treating and examining physicians in making credibility
02 determination). One reason for which an ALJ may discount lay statements is that it
conflicts with medical evidence. Lewis v. Apfel, 236[] F.3d 503, 514 (9th Cir. 2001).
03 Material inconsistencies between claimant's testimony and other evidence in the
record are "germane" to discounting lay testimony. Regennitter v. Comm'r of the
04 Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).

05 I conclude the lay witness's statements in this case cannot outweigh my analysis of the
objective clinical and laboratory evidence, and medical opinion of record, and of
06 claimant's own credibility. Johnson v. Chater, 87 F.3d 1015, 1018 (8[th] Cir. 1996).
In other words, as the trier of fact in this matter, I find that the subjective elements of
07 proof offered in this case, even with lay corroboration of activities and behavior,
cannot carry claimant's burden of proof of disability. See, Taylor v. Heckler, supra;
08 Vincent on behalf of Vincent v. Heckler, supra. Compare Monguer v. Heckler, 722
F.2d 1033, 1037 (2[d] Cir. 1983) (subjective evidence may be accorded less weight
09 than objective medical evidence); Strauss v. Apfel, 45 F.Supp. [2d] 1043, 1049 (D.
[Or.] 1999) (conflict of mother's testimony with medical testimony and evidence
10 germane reason to find it not credible).

11 I also note and have considered the claimant's obesity, she is 5 feet, 7 inches tall and
weighs 250 pounds. However, there is no record of loss of function, nor increase in
12 symptoms related to her weight in the record. No medical provider has opined that
she was functionally impaired or disabled because of her weight prior to her date last
13 insured. Nor did the claimant assert her weight as an impairment, either at the time
of hearing, or in the record prior to DLI.
14

15 Accordingly, I find that the claimant retains the residual functional capacity to lift and
carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for four
16 hours in an 8-hour day and sit for six hours in an 8-hour day with a sit/stand option.
She could not climb ladders but could occasionally climb stairs, balance, stoop, kneel,
17 crouch and crawl. She should avoid heights, hazards, and walking on uneven ground
as well as avoid temperature extremes. She is able to perform detailed tasked [sic]
18 but not complex tasks.

19 This conclusion is supported by the consultative examiners's opinion, Dr. Bushnell.
Although I find that the claimant did not have a severe mental impairment I have
20 taken into consideration the effect that her diagnosed multiple sclerosis, the
consultative examiner's comment on avoiding stress and her medications may have
21 on her cognition, as well as her alleged symptoms and conclude that she should avoid
performing complex tasks which is part of the residual functional capacity as outlined
above.
22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01  (AR 21-23 (internal citations to record omitted.))

02  <u>Physicians' Opinions</u>

03  In general, more weight should be given to the opinion of a treating physician than to a

04  non-treating physician, and more weight to the opinion of an examining physician than to a non-

05  examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted

06  by another physician, a treating or examining physician's opinion may be rejected only for "'clear

07  and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

08  Where contradicted, a treating or examining physician's opinion may not be rejected without

09  "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

10  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Where the opinion

11  of the treating physician is contradicted, and the non-treating physician's opinion is based on

12  independent clinical findings that differ from those of the treating physician, the opinion of the

13  non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d

14  1035, 1041 (9th Cir. 1995). It is the sole province of the ALJ to resolve this conflict. *Id.*

15  "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of

16  a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*,

17  81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true,

18  plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

19  1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true,

20  the evidence supports a finding of disability. *See, e.g., Schneider v. Commissioner of Social Sec.*

21  *Admin.,* 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given

22  the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's]

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01 | functional limitations is sufficient to meet or equal [a listing.]"); *Smolen v. Chater*, 80 F.3d 1273,

02 | 1292 (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom testimony, physicians'

03 | opinions, and lay testimony legally insufficient; finding record fully developed and disability finding

04 | clearly required).

05 |         However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v.*

06 | *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there

07 | were insufficient findings as to whether plaintiff's testimony should be credited as true). As stated

08 | by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon

09 | an undeserving, able claimant." *Barbato v. Commissioner of Soc. Sec. Admin.* , 923 F. Supp.

10 | 1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith

11 | error, in that some of his stated reasons for rejecting a physician's opinion were legally

12 | insufficient).

13 |         Plaintiff avers that the ALJ failed to give clear and convincing reasons for rejecting the

14 | opinions of treating physician Dr. Lellelid and that Dr. Lellelid's opinions should be credited as

15 | true. She notes that Dr. Lellelid first examined her in 1999 (AR 126), reviewed her condition in

16 | 2000 (AR 126), and thereafter saw her on a number of occasions in 2004 and 2005 (AR 167-70,

17 | 221, 233-40). In 2005 and 2006, Dr. Lellelid opined that plaintiff could not work on a full time

18 | basis. (AR 221, 226-30, 277-81.) In declarations provided in those years, Dr. Lellelid attested

19 | to, *inter alia*, plaintiff's fatigue, difficulty concentrating, and the affect of her obesity in

20 | combination with her MS. (AR 226-30, 277-81.) Dr. Lellelid also opined retrospectively that

21 | plaintiff, "on a more probable than not basis," would not have been able to perform full time work

22 | since November 2001. (AR 280-81.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01      As reflected above, the ALJ gave little weight to Dr. Lellelid's opinions upon finding them

02 not supported by the objective evidence as a whole.  (AR 22.)  He found "no objective support

03 for the degree of severity" asserted by plaintiff and noted that Dr. Lellelid rendered her 2005

04 opinion as to plaintiff's disability over eighteen months after the claimant's December 31, 2003

05 DLI.

06      Plaintiff argues that the ALJ's rejection of Dr. Lellelid's opinions *ipso facto* on the ground

07 that they postdated her DLI is contrary to law.  As stated by the Ninth Circuit: "We think it is

08 clear that reports containing observations made after the period for disability are relevant to assess

09 the claimant's disability.  It is obvious that medical reports are inevitably rendered retrospectively

10 and should not be disregarded solely on that basis."  *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th

11 Cir. 1988) (internal citations omitted).  *See also* Social Security Ruling (SSR) 83-20 ("In some

12 cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a

13 disabling impairment(s) occurred some time prior to the date of the first recorded medical

14 examination, e.g., the date the claimant stopped working.") Plaintiff also describes this reasoning

15 as factually flawed, noting that, because the ALJ opined that her condition did not significantly

16 deteriorate from December 31, 2003 to August 2005 (*see* AR 21-22), he cannot reasonably

17 maintain that the later opinions did not accurately reflect her condition as of her DLI.

18      Plaintiff further argues that the ALJ unreasonably rejected Dr. Lellelid's opinions as

19 unsupported by objective evidence.  Plaintiff points to Dr. Lellelid's declarations, wherein she

20 stated "there is no objective way of testing fatigue levels[,] . . . [that] the majority of MS patients

21 have fatigue out of proportion to their findings, but that fatigue is real and it limits their daily

22 activities[,]" and that "the idea that any physician is able to predict precisely how much fatigue an

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01  individual with MS should have, based on certain objective manifestations of MS, is contrary to

02  [her] experience treating MS patients and is unsupported in the medical literature."  (AR 227,

03  279.)

04          Plaintiff also asserts that the ALJ failed to afford sufficient weight both to Dr. Lellelid's

05  expertise and the fact that she accounted for both the combined and interactive effect of plaintiff's

06  impairments.  *See Smolen*, 80 F.3d at 1285 (the opinions of specialists related to their areas of

07  specialization are given more weight than the opinions of non-specialists) and *Lester*, 81 F.3d at

08  833 (treating physician's opinion as to the combined impact of a claimant's limitations is entitled

09  to special weight).  She contends the ALJ erred in favoring the testimony of non-examining

10  medical expert Dr. Haynes.  Plaintiff points to Dr. Haynes' testimony that he was not "in a position

11  to disagree with" Dr. Lellelid's opinion that plaintiff could not work full time, stating that his point

12  was instead that it was "a subjective problem."  (AR 197.)  She also notes Dr. Haynes' failure to

13  testify specifically as to her precise functional limitations.  (AR 295-98.)

14          The Court concludes that, although the ALJ should further examine Dr. Lellelid's opinions

15  on remand, this physician's opinions should not be credited as true.  The ALJ did not reject Dr.

16  Lellelid's opinions based solely on their retrospective nature.  Further, the ALJ reasonably pointed

17  to this fact as one of the reasons for according Dr. Lellelid's opinions little weight.  There is very

18  little in the record prior to plaintiff's DLI.  As pointed to by plaintiff, there is a brief May 1, 2000

19  letter from Dr. Lellelid in which she states she saw plaintiff in 1999 "for possible MS[,]" noting

20  plaintiff "had off-and-on symptoms of neurological dysfunction for the last year or two."  (AR

21  126.)  Dr. Lellelid goes on to state that, in 1999, plaintiff's diagnosis was not clear, but that

22  another physician subsequently clarified that plaintiff "likely did have MS[.]" (*Id.*)  The record also

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01 includes Dr. Lellelid's typed consultation notes from her February 1999 examination of plaintiff,

02 in which she recorded the following:

> . . . Actually today she says she "feels great" and has felt this way for approximately
> one month.  However, in 1998 she had several episodes of symptoms that would
> come and go.  In February she had right leg numbness, she had problems walking
> because her leg just did not seem to work like it should, this went away.  In March
> 1998 she developed photophobia and some blurred vision.  She went to see an eye
> doctor . . . but [by then] it was gone and her symptoms were better.  In the fall of
> 1998 she developed significant fatigue to the point where she had to quit her job in
> real estate and she has not gone back because of fatigue.  She has also had blurred
> vision, numbness up to her waist and difficulty walking yet again.  She has had some
> concentration problems from time to time and balance difficulties.  When she looks
> back she thinks that she had balance difficulties now for probably several years off and
> on, and coordination problems in her hands.

10 (AR 282.) Dr. Lellelid suspected MS, but needed to review an MRI scan from the previous month

11 that "was read as neither diagnostic of either vascular disease or MS." (*Id.*)  The only other

12 substantive documents in the record prior to plaintiff's DLI include some 2001 notes regarding

13 an incident of rectal bleeding.  (AR 129-30.)

14 While it is true that the ALJ noted no significant deterioration between plaintiff's DLI and

15 Dr. Lellelid's opinion of disability, it remains questionable whether there is evidence to support

16 an opinion of disability prior to plaintiff's DLI.  In her August 2005 declaration, Dr. Lellelid

17 rendered an opinion in the present tense.  (AR 226-30.)  It was not until her May 2006 declaration,

18 well after the ALJ's December 2005 decision, that Dr. Lellelid rendered her retrospective opinion.

19 (AR 280-81.)  While her explanation for that opinion appears well reasoned (*see* AR 280-81), the

20 ALJ should consider it on remand.

21 Nor does plaintiff support her contention that the ALJ erred in finding significant the lack

22 of objective evidence to support the alleged degree of severity of plaintiff's condition.  Plaintiff

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01  hinges this argument on the issue of fatigue.  However, Dr. Haynes agreed there was no way to

02  objectively measure fatigue.  (AR 296.)  When asked what he would expect to see objectively to

03  substantiate this subjective claim, he testified: "It would take a more severe case of Multiple

04  Sclerosis.  If it was a progressive case, she might - - and been present for 40 years, you might

05  gradually lose the strength in your legs, you might become clumsy with your arms, lose your

06  balance, end up in a wheelchair.  That's a pretty common scenario.  It doesn't seem to be the case

07  here."  (AR 297.)  He further described another doctor's observance of a problem with plaintiff's

08  gait as only a "slight degree of progression."  (AR 298.)  As a general matter, a treating

09  physician's opinions are entitled to more weight than the opinions of a non-examining physician.

10  However, the Court concludes that the ALJ legitimately cited this issue in critiquing the opinions

11  of Dr. Lellelid.  Moreover, while the ALJ did not specifically cite any other reasons for his

12  rejection of the opinions of Dr. Lellelid, he did point to other reasons for rejecting plaintiff's

13  "assertion of disabling fatigue, weakness and balance[,]" including the little treatment she had

14  received since her diagnosis and the fact that she requires only over-the-counter medication for

15  her physician condition.  (AR 22.)

16       In sum, the ALJ should further address the opinions of Dr. Lellelid on remand, particularly

17  as to the issue of disability prior to plaintiff's DLI.  If necessary, he should contact Dr. Lellelid for

18  further information or additional medical records.

### Credibility and Lay Witness Testimony

20       Plaintiff asserts that substantial evidence does not support the ALJ's decision to find her

21  statements and those of her lay witnesses not credible.  She criticizes the ALJ's heavy reliance on

22  his assessment of objective neurological findings in rendering his credibility decision and argues

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01 | that his credibility finding should not be ratified.

02 |       Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

03 | reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See*

04 | *also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony unreliable, an

05 | ALJ must render a credibility determination with sufficiently specific findings, supported by

06 | substantial evidence. "General findings are insufficient; rather, the ALJ must identify what

07 | testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81

08 | F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her

09 | conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."

10 | *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the

11 | ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between

12 | his testimony and his conduct, his daily activities, his work record, and testimony from physicians

13 | and third parties concerning the nature, severity, and effect of the symptoms of which he

14 | complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

15 |       Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

16 | to work is competent evidence. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The

17 | ALJ can reject the testimony of lay witnesses only upon giving reasons germane to each witness.

18 | *See Smolen*, 80 F.3d at 1288-89 (finding rejection of testimony of family members because, *inter*

19 | *alia*, they were "'understandably advocates, and biased'" amounted to "wholesale dismissal of the

20 | testimony of all the witnesses as a group and therefore [did] not qualify as a reason germane to

21 | each individual who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

22 | *Accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("[L]ay testimony as to a claimant's

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01  symptoms is competent evidence that an ALJ must take into account, unless he or she expressly

02  determines to disregard such testimony and gives reasons germane to each witness for doing so.")

03  Moreover, as recently found by the Ninth Circuit:  "[W]here the ALJ's error lies in a failure to

04  properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot

05  consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully

06  crediting the testimony, could have reached a different disability determination."   *Stout v.*

07  *Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

08        In this case, plaintiff fails to demonstrate error in the ALJ's credibility decision.  First, as

09  required, the ALJ provided germane reasons for rejecting the testimony of plaintiff's lay witnesses.

10  (AR 22-23.)  Second, in finding plaintiff not entirely credible, the ALJ relied not only on a lack of

11  objective evidence to support plaintiff's assertion as to the severity of her condition, but also on

12  the little treatment she had received, the lack of evidence as to progressive deterioration in her

13  functioning, the fact that the record of her earnings shows she has not worked much since 1996,

14  well before she started experiencing symptoms, and the fact that she requires only over-the-

15  counter medication for her physical condition.  (AR 21-22.)  As such, the ALJ need only address

16  the credibility issue on remand if necessitated by a reexamination of other issues.

17                                                RFC

18        The Commissioner asserts the need for a more detailed rationale for the ALJ's RFC

19  finding.  The Commissioner states that, as all of the medical evidence presented to the ALJ is

20  beyond plaintiff's DLI, it is unclear how the ALJ established plaintiff's RFC.

21        As discussed above, and as asserted by plaintiff, the record does contain some medical

22  evidence prior to plaintiff's DLI.  (*See* AR 126-34, 282.)  Nor does it seem particularly unclear

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01  as to how the ALJ determined plaintiff's RFC.  However, because the Court concludes that the

02  ALJ should further delve into the issue of whether evidence exists to support disability prior to

03  plaintiff's DLI, the ALJ's RFC decision may be implicated and require further consideration on

04  remand.

05          Plaintiff also raises an RFC issue.  She asserts that, in including merely a "sit/stand option"

06  in the RFC assessment, the ALJ failed to render a sufficiently specific assessment of her need to

07  alternate sitting and standing.  *See* SSR 96-9p ("The RFC assessment must be specific as to the

08  frequency of the individual's need to alternate sitting and standing.")

09          It appears that the ALJ intended the sit/stand option to indicate a need to change positions

10  "at will."  In giving a hypothetical to the VE, the ALJ said as such: "would need a sit/stand option,

11  meaning she could sit or stand at will in place at the workstation."  (AR 334.)  Therefore, on

12  remand, the ALJ should clarify his meaning as to a sit/stand option both within his RFC assessment

13  and any hypotheticals to a VE.[2]

14                                          Step Five

15          As indicated above, the parties agree the ALJ erred at step five.  He erred in identifying

16  semi-skilled jobs, where he had determined plaintiff had no transferable skills.  *See* 20 C.F.R. §

17  404.1568(d); SSR 82-41.  Further, the fifty local, unskilled call-out operator positions identified

18  is not a significant number.  *Cf. Thomas*, 278 F.3d at 960 (1,300 jobs in Oregon and 622,000

19  national jobs deemed significant).

20

21          [2] Because the ALJ clearly erred in relying on the VE's examples of semi-skilled jobs, the

22  Court need not address plaintiff's additional argument as to the fact that one of those jobs was not
    compatible with an at-will sit/stand option.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01      Defendant maintains further administrative proceedings are necessary given that it is not

02  clear plaintiff would be unable to perform all unskilled jobs, while plaintiff clarifies that the

03  question at step five is only whether she can perform jobs existing in significant numbers.  This

04  matter should be remanded for further administrative proceedings in order to determine whether

05  there are unskilled jobs existing in significant numbers plaintiff could perform.  It is not at all clear

06  from the record that the VE could not identify any such jobs.  (AR 334-43.)  Instead, for reasons

07  that remain unclear, the ALJ relied primarily on semi-skilled jobs identified by the VE.  On

08  remand, the ALJ should obtain supplemental vocational expert evidence as to unskilled jobs.  This

09  evidence may also be required to the extent the ALJ's RFC assessment is implicated by further

10  review of the opinions of Dr. Lellelid.

11                                          **CONCLUSION**

12      For the reasons set forth above, this matter should be REMANDED for further

13  administrative proceedings.

14      DATED this 12th day of March, 2007.

15

16                                          _____
                                            Mary Alice Theiler
17                                          United States Magistrate Judge

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17